**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**SHREVEPORT DIVISION**

DAVID M. DOOLEY, SR., ET AL.  CIVIL ACTION NO. 16-0110

VERSUS  JUDGE S. MAURICE HICKS, JR.

MB INDUSTRIES, L.L.C., ET AL.  MAGISTRATE JUDGE HAYES

**MEMORANDUM RULING**

Before the Court is Petitioners David M. Dooley, Sr., individually and as Trustee

for the BD 2008 Family Trust No. 1, Brenda Dooley, individually and as Trustee for the

DMD 2008 Family Trust No. 1, David M. Dooley, Jr., and Chris Vallot's (collectively the

"Dooley Parties") "Motion to Withdraw Reference" (Record Document 1) arguing the

bankruptcy judge lacks final adjudication authority in the adversary proceeding, <u>David M.</u>

<u>Dooley, Sr., et al. v. MB Industries, LLC, et al.</u>, (Bankruptcy Case No. 15-1005) to the

bankruptcy case, <u>In re: MB Industries, LLC</u>, (Bankruptcy Case No. 14-12416).[1]

Defendants Carmel Enterprises, LLC, Carmel Foods, LLC, Carmel Group, Inc., Hallwood

Financial Limited, Hallwood Modular Buildings, LLC, X-Treme Doors, LLC, Frederick J.

Gossen, Jr. ("Gossen"), Gert Lessing ("Lessing"), and Anthony Gumbiner ("Gumbiner")

(collectively the "Defendants") have opposed the Motion (Record Documents 4, 13, and

18) and suggest the <u>Holland America</u> factors do not favor withdrawing the reference. The

Dooley Parties filed a memorandum (Record Document 1-2) in support of their Motion

and multiple responses (Record Documents 6, 9, and 19) arguing the <u>Holland America</u>

---

[1] For clarification purposes, "Adversary Document" refers to the record in the adversary proceeding, No. 15-1005. Additionally, "Bankruptcy Document" refers to the record in the bankruptcy proceeding, No. 14-12416.

factors, specifically their right to a jury trial, weigh in favor of withdrawal. For the reasons described herein, the Dooley Parties' Motion is **DENIED**.

## FACTUAL AND PROCEDURAL BACKGROUND

The Dooley Parties initiated this adversary proceeding seeking rescission of a transaction which occurred on October 27, 2011, pursuant to which David Dooley, Sr. ("Mr. Dooley") sold and transferred interests in various companies, including the Debtor, MB Industries, LLC ("MBI"). <u>See</u> Adversary Document 1. The consideration promised to Mr. Dooley for the sale of the business interests included: (1) $250,000 cash; (2) a promissory note for $2,750,000; and (3) monthly payments to his wife, son, and son-in-law for an agreed period of time. <u>See id</u>. The cash due at closing in the amount of $250,000 was paid; however, the promissory note has not been paid, except for one interest payment made in February 2012 for approximately $88,000, and the payments to Mr. Dooley's family members were terminated in May 2013. <u>See id</u>.

In February 2013, Mr. Dooley filed suit in Louisiana state court to enforce his rights on the note and amended his petition in February 2014 to first seek rescission. <u>See id</u>. With Mr. Dooley's suit pending, MBI entered bankruptcy in October 2014, automatically staying the Dooley Parties' state court action. <u>See</u> Bankruptcy Document 1. The Dooley Parties then sought authorization from the MBI Bankruptcy Court to proceed with their state court action, but their request was denied by Judge Norman. <u>See</u> Bankruptcy Document 252. In response, the Dooley Parties filed their Complaint to Rescind and Dissolve Contract, and for Damages to initiate this adversary proceeding in the Bankruptcy Court on March 10, 2015. <u>See</u> Adversary Document 1.

In their Complaint, the Dooley Parties seek primary relief in the form of a rescission of the October 27, 2011 transaction. See id. As an adjunct to that claim, the Dooley Parties also claim an accounting, damages for breach of management duties during the period since October 27, 2011, and damages for emotional distress. See id. In the event rescission is not granted, the Dooley Parties alternatively seek compensatory damages, to include payment of all sums which they would have been entitled to receive under the agreement, plus legal interest and attorney's fees. See id.

Defendants, Hallwood Financial Limited, Hallwood Modular Buildings, LLC, Gumbiner, and Lessing (collectively the "Hallwood Parties"), filed an answer and counterclaim in which they (1) objected to the entry of any final judgment in this adversary proceeding by the Bankruptcy Court, and (2) demanded a jury trial. See Adversary Document 8. The Hallwood Parties have recently withdrawn their previous demand for jury trial. See Adversary Document 153.

Defendants, Gossen, The Carmel Group, Inc., Carmel Enterprises, X-Treme Doors, LLC, and Carmel Foods, LLC (collectively the "Gossen Parties"), answered the Complaint, and like the Hallwood Parties, specifically objected to the entry of any final orders or judgments by the Bankruptcy Court. See Adversary Document 14. In addition, on December 15, 2015, Gossen, The Carmel Group, Inc., and Carmel Enterprises (the "Gossen Counterclaimants") filed a counterclaim against the Dooley Parties, seeking indemnity for costs incurred in defending the original Complaint. See Adversary Document 96. The Dooley Parties timely answered the counterclaim, and in their answer

they (1) expressly declare that they do not consent to the entry of final judgment by the Bankruptcy Court, and (2) ask for a jury trial. See Adversary Document 100.

The debtor, MBI, filed an answer to the original Complaint and, pursuant to Bankruptcy Rule 7012, expressly declared that it does not consent to entry of final orders or judgments by the bankruptcy judge. See Adversary Document 10. MBI subsequently filed a counterclaim seeking to avoid as fraudulent various transfers made to the Dooley Parties. MBI asserts that its counterclaim is a "core" proceeding, although several of the causes asserted are founded on state law. The Dooley Parties have answered the counterclaim, have given notice that they do not consent to the entry of final orders or judgments by the Bankruptcy Court on any non-core claims, and have requested a jury trial.[2] See Adversary Document 99.

The remaining Defendants to the original Complaint, BK, LLC, MBI Global, LLC, and MBI Construction and Logistics Services, LLC (hereafter the "Schoonover Parties"), are all entities in which Steven Schoonover, or companies controlled by him, has acquired an interest. The Schoonover Parties filed an answer in which they question the existence of "related to" jurisdiction of this Court with respect to the claims. See Adversary Document 9.

In addition to the pleadings themselves, there have been significant orders and filings which are pertinent in this matter. On April 8, 2015, the Dooley Parties filed several Proofs of Claim regarding the payment of salary and employment benefits and payments on the $2.75 million promissory note, asserting their claims are "subject to adjustment in

---

[2] MBI filed an unopposed motion to strike this jury demand (Adv. Doc. 102), and the Bankruptcy Court struck the jury demand with the Dooley Parties' consent. See Adversary Document 144.

4

the event Dooley is successful in obtaining rescission of the transaction" in the MBI bankruptcy case. <u>See</u> Bankruptcy Documents 42-45. On June 4, 2015, Judge Norman issued an Order (the "<u>Stern</u> Order") in the adversary proceeding requiring the parties to make any objections not later than July 10, 2015, to the Bankruptcy Court finally adjudicating matters contemplated by <u>Stern v. Marshall</u>. <u>See</u> Adversary Document 18. Importantly, no parties filed any objection to Judge Norman's <u>Stern</u> Order.

On August 28, 2015, the Dooley Parties filed a Petition for Writ of *Mandamus* and/or Writ of *Quo Warranto* in the 15th Judicial District for Acadia Parish, Louisiana. <u>See</u> Adversary Document 20-1. Because this new Dooley lawsuit pertains to the same facts and legal issues among the same parties as in the adversary proceeding, Judge Norman enjoined that state court litigation. <u>See</u> Adversary Document 50. Next, the Dooley Parties amended their original Complaint[3] twice and paragraph one now reads, "This is a non-core proceeding. Plaintiffs do not consent to the issuance of final orders or judgments by the bankruptcy court."[4] Adversary Documents 126 and 142. On May 6, 2016, Mr. Dooley filed a Petition for Declaratory Judgment in the 15th Judicial District for Acadia Parish, Louisiana. <u>See</u> Record Document 23-1. In that petition, Mr. Dooley sued three of the Defendants in the adversary proceeding (Hallwood Modular Buildings, LLC, Hallwood Financial Limited, and Gossen). <u>See id</u>. The defendants filed an Exception of *Lis Pendens* and a Motion for Stay because the lawsuit involved the same transaction or occurrence

---

[3] The Dooley Parties proclaimed in their original Complaint that their claims are "core" matters and that the bankruptcy court has jurisdiction. <u>See</u> Adversary Document 1.

[4] Notably, the Bankruptcy Court in its Order granting the Dooley Parties leave to amend their original Complaint expressly stated, "Any amended pleading filed is subject to the Court's prior order dated June 4, 2015 (Adv. Doc. 18) relating to the parties right to object to final adjudication by this Court that fall within the scope of <u>Stern v. Marshall</u>, 564 U.S. 2 (2011) by July 10, 2015. That deadline is not extended and any amended complaint or response may not raise jurisdictional issues under <u>Stern</u>." Adversary Document 129.

and the same parties as the adversary proceeding. See Record Document 23-2. On August 8, 2016, the district court in Acadia Parish stayed Mr. Dooley's lawsuit and the ruling was affirmed by the Third Circuit Court of Appeal. See Record Documents 23-3 and 23-4.

Additionally, since the filing of the instant Motion, the Bankruptcy Court has ruled on five motions for summary judgment regarding the Dooley Parties' claims against the Defendants, and five motions to dismiss in this matter. The Bankruptcy Court dismissed the Dooley Parties' (1) indemnity claims against John Blank ("Blank"), Lessing, and Gossen, (2) claims for mismanagement against Gumbiner and Lessing, and (3) claims of intentional infliction of emotional distress against all Defendants. See Adversary Documents 182, 183, and 185. More recently, the Court denied the Dooley Parties' Motion for Leave to Appeal the Bankruptcy Court's dismissals, suggesting it would be more just and efficient for the case to remain in the Bankruptcy Court. See Case No. 16-362, Record Document 7.

The Dooley Parties argue the Holland America factors weigh in their favor and withdrawal is proper. Chiefly, the Dooley Parties suggest their constitutional right to a jury and the fact that their underlying lawsuit is a non-core proceeding is sufficient for this Court to grant their Motion to Withdraw. See Record Document 1-2 at 9-12. Defendants state the Dooley Parties have waived their right to a jury trial or, alternatively, have no right. See Record Document 4 at 19-22. Defendants also argue that whether the underlying lawsuit is core or non-core is not pertinent in light of new case law; instead, the issue is whether the bankruptcy court has authority to finally adjudicate the matter,

6

which Defendants believe the bankruptcy court has because all parties consented. <u>See</u> <u>id</u>. at 16. The Dooley Parties state there was no consent, and in the event there was consent, it was not "knowing and voluntary." <u>See</u> Record Document 1-2 at 16.

In light of amended pleadings filed subsequent to the instant Motion by the Hallwood Parties and Gossen Parties which assert certain counterclaims against the Dooley Parties, the Dooley Parties argue these counterclaims, in addition to the crossclaims and third party demand filed by the Dooley Parties, are outside the "related to" jurisdiction of the bankruptcy court which weighs heavily in favor of withdrawal. <u>See</u> Record Document 9 at 7. The Dooley Parties also state the Hallwood Parties and Gossen Parties attempt to change their position with respect to 28 U.S.C. 157(c)(2) consent and request that they be judicially estopped from maintaining there was consent by all parties. <u>See id</u>. at 6.

**LAW AND ANALYSIS**

**I.      Legal Standards**

    **A.      Permissive Withdrawal of Reference**

The Dooley Parties do not claim that grounds exist for mandatory withdrawal of reference; instead, they seek permissive withdrawal. <u>See</u> Record Document 1-2 at 8. Under 28 U.S.C. § 157(d), "[t]he district court may withdraw, in whole or in part, any case or proceeding referred…, on its own motion or on timely motion of any party, for cause shown." The mover has the burden of showing cause for permissive withdrawal. <u>See</u> <u>Case Energy Servs., LLC v. Padco Energy Servs., LLC</u>, 2017 WL 4544719, at *3 (W.D. La. 2017).

The decision to withdraw a reference from bankruptcy court is within the district court's discretion, <u>In re Mirant Corp.</u>, 197 Fed.Appx. 285 (5th Cir. 2006), but the decision "must be based on a sound, articulated foundation." <u>Holland Am. Ins. Co. v. Succession of Roy</u>, 777 F.2d 992, 998 (5th Cir. 1985). The Fifth Circuit has identified non-exclusive factors for a district court to consider in deciding whether to withdraw a reference on permissive grounds: (1) whether the proceeding is core or non-core; (2) whether withdrawal would foster a more economical use of the parties' resources; (3) whether withdrawal would expedite the bankruptcy process; (4) whether withdrawal would reduce forum shopping and promote uniformity; and (5) whether jury demands have been made. <u>See id.</u> at 999.

## II.  Analysis

### A.  Factor One: Core or Non-Core

Bankruptcy proceedings fall into three categories: those that arise under Title 11, those that arise in a Title 11 case, and those that are merely "related to" a Title 11 proceeding. <u>See</u> <u>Stern v. Marhsall</u>, 564 U.S. 462, 473 (2011). Cases falling under the former two categories are known as "core" proceedings, while cases that are only related to a Title 11 proceeding are "non-core." <u>See</u> <u>Executive Benefits Ins. Agency v. Arkison</u>, 134 S.Ct. 2165, 2170 (2014); 28 U.S.C. § 157(b). District courts may refer any bankruptcy proceedings, whether core or non-core, to the Bankruptcy Court. <u>See</u> 28 U.S.C. § 157(a); <u>see also</u> <u>Stern</u>, 564 U.S. at 474. The Western District of Louisiana has generally referred all bankruptcy matters to the bankruptcy court. <u>See</u> L.R. 83.4.1.

Generally, a bankruptcy judge may hear and enter final judgments in core proceedings, but in a non-core proceeding, may only submit proposed findings and conclusions of law to the district court, which then enters final judgment. See Stern, 564 U.S. at 474-75; 28 U.S.C. § 157(c)(1). A bankruptcy judge may, however, "with the consent of all the parties to the proceeding, … hear and determine and ... enter appropriate orders and judgments ...." 28 U.S.C. § 157(c)(2); Executive Benefits, 134 S.Ct. at 2172. The Stern court held that although certain particular claims may be labeled by Congress as "core" bankruptcy proceedings under 28 U.S.C. § 157(b), the Constitution nevertheless does not permit a bankruptcy judge to adjudicate those claims. See Executive Benefits, 134 S.Ct. at 2172; Stern, 564 U.S. at 503. Instead, the bankruptcy judge must treat these ostensibly core "Stern claims" as he would a non-core claim. See Executive Benefits, 1324 S.Ct. at 2172-73.

The original Complaint seeks rescission of a transaction which occurred on October 27, 2011, pursuant to which the Dooley Parties transferred and sold their interests in the Carmel Companies. See Adversary Document 1. The claim for rescission is based on the allegations of non-payment of the purchase price, vitiation of consent, and fraud, all being state law claims governed by Louisiana law. See id. The Complaint also seeks compensatory damages and an accounting under Louisiana law. See id. Count Three involves a claim for damages against Lessing and Gumbiner for breach of management duties. See id. Count Four seeks damages for intentional infliction of emotional distress. See id. Count Five and Six are claims for compensatory and exemplary damages, respectively. See id. The Dooley Parties also filed crossclaims

against Lessing and Gossen and a third party demand against Blank under Louisiana law relating to fault and indemnity seeking money damages.

There are three counterclaims in this proceeding. The Hallwood Parties and the Gossen Parties have each filed counterclaims seeking a money judgment on separate indemnity agreements. Each of these pleadings have been amended. <u>See</u> Adversary Documents 153 and 154. The third counterclaim is by MBI, which asserts six different causes. Counts One and Two seek to avoid allegedly fraudulent transfers pursuant to 11 U.S.C. § 548. Count Three seeks to avoid allegedly fraudulent transfers under the Texas Uniform Fraudulent Transfer Act, made applicable by 11 U.S.C. § 544. Count Four seeks to recapture payments pursuant to Louisiana Codal provisions made applicable by 11 U.S.C. § 544. Count Five seeks disallowance of claims pursuant to 11 U.S.C. § 502(d) and Count Six requests the Dooley Parties' claims be subordinated pursuant to 11 U.S.C. 510.

It is clear that all claims brought by the Dooley Parties are considered non-core. Likewise, the counterclaims brought by the Hallwood Parties and Gossen Parties are considered non-core. While the claims asserted by MBI are core proceedings, the decision rendered in <u>Stern</u> raises constitutional questions since they have significant non-core characteristics because they are predicated in part under state law. This issue appears to be moot because the Defendants do not contest whether the claims involved in this proceeding are core or non-core, but rather the Defendants argue all parties have consented to the adjudication by the Bankruptcy Court. <u>See</u> Record Document 4 at 15.

In Wellness Int'l Network, Ltd. v. Sharif, 135 S.Ct. 1932, 1939 (2015), the Supreme Court addressed the question whether parties can consent to a bankruptcy judge's adjudication of a Stern claim in the same manner as parties can consent to adjudication of a traditional non-core claim. The Court answered the question in the affirmative, holding that "allowing bankruptcy litigants to waive the right to Article III adjudication of Stern claims does not usurp the constitutional prerogatives of Article III courts." Id. at 1944-45. Following Stern and Wellness International, Congress' labeling of core and non-core claims has little bearing on the bankruptcy court's authority to adjudicate a matter.

"Determining that a matter is core is certainly no longer tantamount to a determination that the bankruptcy court has the power to finally resolve it." In re Arbco Capital Mgmt., LLP, 479 B.R. 254, 262 (S.D. N.Y. 2012). The court in In re Arbco concluded "the relevant inquiry under the first prong of the Orion (Holland America) test is not whether a matter is core or non-core, but whether the bankruptcy court has the authority to finally adjudicate the matter." Id. In analyzing whether the bankruptcy court may constitutionally enter a final judgment, the court considered "the three factors emphasized in Stern: (1) whether the defendant filed a proof of claim in the bankruptcy proceeding, (2) whether the right is public or private, and (3) whether the parties consented to have the bankruptcy court enter final judgment." Id.

The issue of consent was addressed in detail by the court in Wellness International, which held there must be valid consent by all the parties. See Wellness International, 135 S.Ct. at 1947; 28 U.S.C. § 157(c)(2). The Supreme Court warned that "it bears emphasizing, however, that a litigant's consent – whether express or implied –

must still be knowing and voluntary." Id. at 1948. "[T]he key inquiry is whether the litigant or counsel was made aware of the need for consent and the right to refuse it, and still voluntarily appeared to try the case before the non-Article III adjudicator." Id. (internal quotation and citation omitted). Determinations whether a party in fact consented to bankruptcy court jurisdiction may "require a deeply factbound analysis of the procedural history" of a particular case. Id. at 1949.

Section 157(c)(2) and Wellness International both make it clear that a "bankruptcy court must obtain 'the consent'—consent *simpliciter*—'of all parties to the proceeding' before hearing and determining a non-core claim." Wellness Int'l Network, 135 S. Ct. at 1947, citing 28 U.S.C. § 157(c)(2). The Dooley Parties highlight this requirement in two of their briefs. See Record Document 1-2 at 15; Record Document 6 at 3. The Defendants' two contentions to this argument are (1) the Dooley Parties have no standing to argue the other parties' objections and (2) by failing to respond to the Bankruptcy Court's Stern Order, every party in the adversarial proceeding consented. See Record Document 13 at 15.

The Defendants first argument is underdeveloped and not supported by case law; thus, the Court is unpersuaded and will move to its analysis of whether all parties consented.

### i.    The Dooley Parties and the Schoonover Parties Consented

The Stern Order stated, "Parties have the right to object to the final adjudication by this Court of any matter that fall within the scope of Stern v. Marshall, 564 U.S. 2 (2011)….[A]ny objection to this Court's entry of final orders in this case must be filed with

this Court no later than July 10, 2015." Adversary Document 18. Both the Dooley and Schoonover Parties, in addition to every other party, did not file any objection to the Stern Order. Importantly, both parties did not object initially in their first pleading,[5] in fact, the Dooley Parties proclaimed in their original Complaint that their claims were "core" matters and the bankruptcy court had jurisdiction to enter final judgments.[6] See Adversary Document 1 at 1.

The Dooley Parties argue the Stern Order did not give notice of the "need for consent" and did not provide a "right to refuse" that consent. See Record Document 1-2 at 18. However, since Wellness International, many courts have held the right to object implies consent is necessary and the parties have the right to refuse it. See In re Robinson, 554 B.R. 800, 807 (Bankr. W.D. La. 2016) (party impliedly consented where it "failed to object to [bankruptcy] [c]ourt's entry of a final order or judgment pursuant to Stern"); In re Fatoorehci, 546 B.R. 786, 789 (Bankr. N.D. Ill. 2016) (failing "to object at any point in the litigation" constitutes implied consent); Cole v. Strauss, 2017 WL 26906, *9 (W.D. Mo. 2017) ("parties have implicitly consented when they appeared before a

---

[5] The Dooley Parties state the Schoonover Parties objected to the final adjudication by the Bankruptcy Court in their Answer. See Record Document 6 at 1. However, the Schoonover Parties did not actually object but merely raised the possibility that the Bankruptcy Court did not have authority. See Adversary Document 9. Simply raising the possibility that the Bankruptcy Court has no authority to issue a final judgment is not the equivalent of an objection. See In re Breland, 2016 WL 3193819, *2 (Bankr. S.D. Ala. 2016) (IRS impliedly consented where it, "in a footnote, merely noted without objecting that this is a noncore proceeding in which the bankruptcy court may not enter a final order").

[6] The Dooley Parties have amended their original Complaint and paragraph one now reads, "This is a non-core proceeding. Plaintiffs do not consent to the issuance of final orders or judgments by the bankruptcy court." The Dooley Parties argue the amended Complaint supersedes the original Complaint; accordingly, they contend they have objected to the Bankruptcy Court's authority. See Record Document 19 at 5. However, the Bankruptcy Court, in its Order granting the Dooley Parties leave to amend their original Complaint, expressly stated that "[a]ny amended pleading filed is subject to the Court's prior order dated June 4, 2015 (the Stern Order) … relating to the parties' right to object to final adjudication by this Court." Record Document 129. Therefore, the amendment has no effect and the Dooley Parties' argument is without merit.

bankruptcy court without objection"); In re Empire Land, LLC, 2016 WL 5890062, *2 ("a party's knowing failure to object and purposeful participation in the bankruptcy court proceeding does constitute consent to bankruptcy court jurisdiction"). Furthermore, the Fifth Circuit has found the docket sheet of a case sufficient to put a party on notice. See In re Delta Produce, L.P., 845 F.3d 609, 617 (5th Cir. 2016). If a docket sheet is sufficient to put a party on notice of their right to object, then so too is an order specifically requiring the parties to object to the Bankruptcy Court's authority.

The Dooley Parties also actively litigated the matter before the Bankruptcy Judge after the Stern Order deadline passed, filing dispositive motions. This action strengthens the Court's conclusion. In True Traditions, LC v. Wu, 552 B.R. 826, 839 (N.D. Cal. 2015), the court determined that a party had consented to the final adjudication of state law claims by filing a motion for summary judgment seeking affirmative relief. The court stated, "[t]he unmistakable implication from Appellant's motion is that it sought an entry of final judgment in its favor." Id. There, the appellant challenged the bankruptcy court's jurisdiction earlier in the proceeding and was aware of the need to consent, but sought final judgment in its favor without ever mentioning consent. See id. The court agreed with the bankruptcy judge who stated, "[i]f I entered an order on your motion, I would be doing exactly what you asked me to do, which seems to me to be consent." Id. Therefore, affirmative action taken by parties who initially contested the bankruptcy court's authority is sufficient for implied consent.

The Dooley Parties argue True Traditions is distinguishable because the court was heavily influenced by the facts which suggested issues of litigation misconduct and

sandbagging. <u>See</u> Record Document 6 at 4. The Court does not agree. Although sandbagging may have been an issue in <u>True Traditions</u>, the court addressed in detail the distinction between affirmative action and passive participation in determining what constituted implied consent. <u>See</u> <u>True Traditions</u>, 552 B.R. at 839. Moreover, since the decision in <u>Wellness International</u>,[7] other courts have ruled that a party's active participation in the bankruptcy proceeding, especially the filing of dispositive motions, is sufficient to implicitly consent to the final adjudication by the bankruptcy court. <u>See</u> <u>In re Robinson</u>, 554 B.R. at 807; <u>In re Saenz</u>, 2016 WL 9021733, *6 (Bankr. S.D. Tex. 2016); <u>In re Empire Land, LLC v. Empire Partners, Inc.</u>, 2016 WL 5890062, *2 (C.D. Cal. 2016).

Here, the Dooley Parties, after the <u>Stern</u> Order deadline, filed a motion for partial summary judgment on October 12, 2015 on the central issue of their case: rescission. <u>See</u> Record Document 14-1 at 2. They also filed a supplemental motion for summary judgment, another motion for partial summary judgment, and a motion for summary judgment all on March 24, 2016. <u>See id</u>. The Court finds this active participation by the Dooley Parties sufficient to imply they consented to the Bankruptcy Court's authority. <u>See</u> <u>In re Saenz</u>, 2016 WL at *6.

### ii.    Hallwood Parties, Gossen Parties, and MBI Have Consented

In answering the original Complaint, the Hallwood Parties, Gossen Parties, and MBI all specifically objected to the issuance of final orders by the Bankruptcy Court. <u>See</u>

---

[7] The Court does not find the Dooley Parties' reference to <u>Stern</u> on this issue persuasive because <u>Stern</u> was decided prior to <u>Wellness International</u>, which specifically addressed the issue of implied consent. <u>See</u> Record Document 6 at 4.

Adversary Documents 8, 14, and 10.[8] However, this original objection does not mean the parties cannot later consent to the authority of the Bankruptcy Court. Based on <u>Wellness International</u>, several courts have ruled that a party that initially does not consent to the authority of a bankruptcy court to issue a final judgment may subsequently waive its right to adjudication by an Article III judge. <u>See In re United Western Bancorp, Inc.</u>, 558 B.R. 409, 413-14 (Bankr. D. Col. 2016) (bankruptcy court had authority to issue final judgments where party "changed its position" by filing "'Statement of Position'" that "unequivocally stated that the [party] . . . 'consents to entry of final orders or judgments by the Bankruptcy Court in this Adversary Proceeding'" after its "defenses [initially] raised complicated jurisdictional issues"); <u>In re AWTR Liquidation Inc.</u>, 547 B.R. 831, 840 (Bankr. C.D. Cal. 2016) ("parties do sometimes change such positions to avoid the expense, delay, and inconvenience of *de novo* proceedings, or for any other reasons"); <u>see also In re Empire Land, LLC v. Empire Partners, Inc.</u>, 2016 WL 5890062, *2 (C.D. Cal. 2016). Thus, even if the Defendants and MBI might have initially objected to the Bankruptcy Court issuing final judgments, they can still subsequently waive their right to an Article III judge by consenting to the Bankruptcy Court's authority.[9] The Court concludes these parties have done just that by filing dispositive motions after the <u>Stern</u> Order deadline.

Here, not only did the parties who initially did not consent fail to respond to the <u>Stern</u> Order, they actively litigated this matter in bankruptcy court, filing dispositive motions seeking final judgments from the bankruptcy court judge. MBI filed a motion to

---

[8] Because these parties technically objected prior to the <u>Stern</u> Order deadline, the Court must analyze their consent differently than the parties who did not object at all.

[9] "Waiver is the intentional relinquishment or abandonment of a known right." <u>U.S. v. Olano</u>, 507 U.S. 725, 733, 113 S.Ct. 1770 (1993).

dismiss on behalf of its Chief Financial Officer, Blank.[10] See Adversary Document 134.

The Hallwood Parties and the Gossen Parties jointly filed a motion for partial summary

judgment in which the consent issue was never addressed. See Adversary Document

208. Additionally, the Hallwood Parties and the Gossen Parties have expressly consented

to the Bankruptcy Court's authority to enter final orders. See Adversary Documents 153

and 154. Although the parties initially objected, they appeared to voluntarily try the matter

before the bankruptcy court by continuing to participate in the proceeding.[11] By filing the

dispositive motions and seeking final judgments, in addition to the Hallwood and Gossen

Parties expressly consenting, the Court believes the parties relinquished their right to an

Article III judge, and consented to the Bankruptcy Court's authority.

### iii.    "Related To" Jurisdiction

Consent is only sufficient to the extent that the bankruptcy court has subject matter

jurisdiction. See In re MBM Entertainment, LLC, 531 B.R. 363 (Bankr. S.D. N.Y. 2015).

The Dooley Parties argue the Bankruptcy Court does not have "related to" jurisdiction

over a number of a claims in the instant matter, including (1) the Defendants'

counterclaims, (2) the Dooley Parties' crossclaims against Gumbiner and Lessing, and

(3) the Dooley Parties' Third Party Demand against Blank. See Record Document 9 at 2-

---

[10] Furthermore, whether MBI consented or objected to Bankruptcy Court authority is irrelevant because the Dooley Parties' claims against MBI go to the heart of the claims allowance process and are therefore "core" proceedings. As such, the parties' consent to bankruptcy court jurisdiction is irrelevant. See In re Ames Department Stores, Inc., 542 B.R. 121, 139 (Bankr. S.D. N.Y. 2015) (citation omitted) ("when a creditor files a claim against a bankruptcy estate that triggers the claims allowance process, it submits to the jurisdiction of the bankruptcy court, conferring core status to the resolution of both the claims themselves and the debtor's responsive claims").

[11] The Court uses this rationale to find that even if the Dooley Parties' Amended Complaint did object to the authority of the Bankruptcy Court, they subsequently waived that objection by filing a motion for partial summary judgment and a motion to dismiss. See Bankruptcy Documents 30 and 145.

3. In their brief the Dooley Parties state that the question of jurisdiction has been raised with the Bankruptcy Court, but the Bankruptcy Court had not yet determined the issue. <u>See</u> Record Document 9 at 4. However, since the filing of the Dooley Parties' brief, the Bankruptcy Court has found that "related to" jurisdiction exists with regard to the Dooley Parties' crossclaims against Gumbiner and Lessing and their Third Party Demand against Blank. <u>See</u> Record Documents 16-2 and 16-1. Therefore, the Court finds these jurisdictional issues moot and will only analyze whether "related to" jurisdiction exists regarding the Defendants' counterclaims.

Under 28 U.S.C. § 1334(b), the Bankruptcy Court has jurisdiction over (1) cases under title 11; (2) proceedings arising under title 11; (3) proceedings "arising in" a case under title 11; and (4) proceedings "related to" a case under title 11. <u>See</u> <u>In re Wood</u>, 825 F.2d 90, 92 (5th Cir. 1987). It is necessary only to determine whether a matter is at least "related to" the bankruptcy. <u>See id.</u> at 93. Section 1334 does not define "related" matters. However, in the Fifth Circuit, if the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy, then it is "related to" cases under the Bankruptcy Code. <u>See id.</u>; <u>In re Spillman Dev. Grp., Ltd.</u>, 710 F.3d 299, 304 (5th Cir. 2013). A conceivable effect is any that could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate. <u>See</u> <u>In re Spillman Dev. Corp., Ltd.</u>, 710 F.3d at 304. "Related to" jurisdiction avoids the inefficiencies of piecemeal adjudication and promotes judicial economy by aiding in the efficient and expeditious resolution of all matters connected to the debtor's estate. <u>See</u> <u>In re Zale Corp.</u>, 62 F.3d

746, 752 (5th Cir. 1995). Even when there is a possibility a suit may ultimately have no effect on the estate, this possibility is not enough to conclude there would be no conceivable effect. See In re Mugica, 362 B.R. 782, 788 (Bankr. S.D. Tex. 2007), citing In re Wood, 825 F.2d at 93. Certainty or even likelihood of such an effect is not a requirement. See id., citing Arnold v. Garlock, Inc., 278 F .3d 426, 434 (5th Cir. 2001); see also In re Canion, 196 F.3d 579, 586-87 (5th Cir. 1999).

In support, the Dooley Parties only argue the counterclaims can have no conceivable effect on the bankruptcy estate because the claims are "purely based on contract law," and "not founded in bankruptcy law." See Record Document 9 at 2. The Dooley Parties state shared facts between the third party action and the debtor-creditor conflict do not, in and of themselves, suffice to make the third party action "related to" the bankruptcy. See Matter of Zale, 62 F.3d 746, 754 (5th Cir. 1995). After reviewing the counterclaims at issue, the Court finds they could have a conceivable effect on the bankruptcy of MBI; therefore, the Bankruptcy Court has "related to" jurisdiction.

In this case, the Dooley Parties seek to rescind (either due to invalidity/nullity or for nonperformance) the October 2011 transactions. The Defendants, in response, have filed counterclaims for indemnity and damages for breach of warranties and covenants in the Member Interest Purchasing Agreement (the "MIPA") whereby Hallwood Financial acquired an 80% interest in Hallwood Modular. Under the MIPA, Mr. Dooley obligated himself and warranted that he would do what was necessary to validly convey the 80% equity interest to Hallwood Financial. If the Dooley Parties rescind any of the agreements comprising the October 2011 transactions, and to the extent those agreements were

essential to transferring the 80% equity interest, Mr. Dooley will have breached the MIPA, and would owe significant damages to Hallwood Financial. Furthermore, the counterclaims assert breaches of various indemnification agreements for all expenses incurred by the Defendants related to defending the Dooley Parties' claims.

Hallwood Financial and Hallwood Modular also assert claims under La. Civ. Code art. 1952, in the event all of the October 2011 transactions are null due to Mr. Dooley's unilateral error. If the Dooley Parties are liable for those counterclaims, their assets will be depleted or, at a minimum, their recovery will be offset. In that event, their ability to satisfy any potential judgment against them for fraudulent transfers as asserted in MBI's counterclaim would be reduced. The Dooley property subject to the MBI counterclaim would thus not inure to the benefit of MBI's other creditors, and would thus affect the administration of the MBI bankruptcy estate. The Court need not consider the merits of these claims at this time to conclude that if successful they will affect the bankruptcy estate. See In re Mugica, 362 B.R. 782, 788 (Bankr. S.D. Tex. 2007). As such, the Defendants' counterclaims have a conceivable effect on the MBI bankruptcy, and the Bankruptcy Court has "related to" jurisdiction over the Defendants' counterclaims.

### iv.    Judicial Estoppel

Next, the Dooley Parties contend the doctrine of judicial estoppel prevents the Defendants from changing their position with respect to 28 U.S.C. § 157(c)(2) consent, specifically that the Defendants' subsequent consent to the Bankruptcy Court's authority is an "inconsistent position." See Record Document 9 at 5. Defendants argue judicial

estoppel does not apply in this circumstance, and that they have simply waived their right to an Article III judge. <u>See</u> Record Document 13 at 16.

Judicial estoppel is an equitable doctrine that prevents a party from asserting a position in a legal proceeding that is contrary to a position previously taken in the same or some other proceeding. <u>See</u> <u>Hopkins v. Cornerstone A.M.</u>, 545 F. 3d 338, 347 (5th Cir. 2008). Judicial estoppel is an extraordinary remedy that should only be used when a party's inconsistent behavior will result in a miscarriage of justice. <u>See</u> <u>Ryan Operations G.P. v. Santiam-Midwest Lumber Company</u>, 81 F. 3d 355, 365 (3rd Cir. 1996). In <u>New Hampshire v. Maine</u>, 532 U.S. 742, 743, 121 S. Ct. 1808, 1811 (2001), the Supreme Court identified several non-exclusive factors that may help guide a court in determining whether the doctrine applies, which are:

i.    The position of the party against which estoppel is sought is "clearly inconsistent" with its prior legal position;

ii.    The party against which estoppel is sought succeeded in persuading a court to accept its prior position; and

iii.    The party seeking to assert an inconsistent position will derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped.

In their respective answers, the Defendants both stated they did not consent to the entry of final orders or judgments by the bankruptcy judge. <u>See</u> Adversary Documents 8 and 14. However, in response to the Dooley Parties' First and Second Amended Complaint and Counterclaims, both the Hallwood and Gossen Parties have since amended their answers to include, "To the extent this proceeding is non-core, [the Bankruptcy Court] has 'related to' jurisdiction to decide all issues. All parties have

consented to this Court's entry of final orders in this proceeding…." Adversary Documents 153 and 154. The Dooley Parties suggest the Defendants, with this amendment, have unquestionably taken an inconsistent position and, consequently, should be estopped from asserting their argument regarding the consent issue. <u>See</u> Record Document 9 at 6. The Court does not agree.

First, the Defendants are not asserting inconsistent "positions." They asserted in their original pleadings that the Dooley Parties' claims were non-core. <u>See</u> Record Document 2-1 at 20 and 75. In their Answers to First and Second Amended Complaint and Counterclaims, Defendants do not now assert the claims are core. Rather, Defendants merely state that they have waived their right to an Article III judge and have consented to the Bankruptcy Court's authority. Waiving a right to an Article III judge is not a "position" argued to a court.

Next, the Dooley Parties do not, and cannot, argue whether the second and third factors have been met. No court in this case or in another case has relied upon the "position" that Defendants did not initially consent to bankruptcy court authority. Nor will the Defendants derive an unfair advantage or impose an unfair detriment on the Dooley Parties. As the Court has stated, the Dooley Parties consented to the final adjudication by the bankruptcy court when it failed to respond to the <u>Stern</u> Order. Thus, the Defendants' waiver of their own rights to an Article III judge does not prejudice the Dooley Parties.

The Defendants are not estopped from waiving their initial objection to the final authority of the Bankruptcy Court. The Bankruptcy Court has "related to" jurisdiction over

the Defendants' counterclaims; and all the parties consented, either expressly or implicitly, to the final authority of the Bankruptcy Court. Accordingly, this factor favors maintaining the reference.

## B. Factor Five: Jury Demand[12]

The Dooley Parties suggest their right to, and demands for, a jury trial in this matter should be decisive in withdrawing the reference. See Record Document 19 at 9. Defendants argue the Dooley Parties have waived their right to a jury trial by filing proofs of claim in the bankruptcy proceeding and initiating this adversary proceeding. See Record Document 4 at 22. Alternatively, Defendants assert the Dooley Parties' claims are equitable in nature, and thus are not entitled to a jury trial. See id. at 23. In response, the Dooley Parties contend that filing proofs of claim did not result in a waiver of the right to a jury trial for their non-fraudulent-transfer claims, and state the Fifth Circuit has repeatedly recognized the right to a jury trial for claims of rescission based on similar surrounding facts. See Record Document 6 at 5-8.

Bankruptcy Rule 9015 incorporates Fed. R. Civ. P. 38 and its requirements regarding requests for jury trials. The right of trial by jury as declared by the Seventh Amendment of the Constitution is preserved to the parties inviolate. See Fed. R. Civ. P. 38(a). However, Rule 38 should not be interpreted to expand the right to a jury trial beyond constitutional or statutory grants. See Rachal v. Ingram Corp., 795 F.2d 1210, 1214 (5th

---

[12] The Court analyzes this factor now because courts have found it to be a decisive factor. This "fundamental right carries such weight that the collective effort of the remaining five factors should not alter the final determination." In re British American Properties III, Ltd., 369 B.R. 322, 326 (Bankr. S.D. Tex. 2007).

Cir. 1986) (citations omitted). The Seventh Amendment provides that "[i]n Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved." <u>U.S. Bank Nat. Ass'n v. Verizon Commc'ns, Inc.</u>, 761 F.3d 409, 416 (5th Cir. 2014), <u>quoting</u> U.S. Const. amend. VII. It applies to suits brought to determine legal rights, as opposed to equitable rights. <u>See id.</u> (citations omitted). Here, the right to a jury trial has been invoked with respect to the original Complaint,[13] the Hallwood counterclaim, and the Gossen counterclaim. <u>See</u> Adversary Documents 8 and 101.

Regarding the Dooley Parties' claims for rescission, Defendants argue the Dooley Parties have waived their right to a jury trial because the resolution of these claims "will necessarily require resolution" of the Dooley Parties' claims against the Debtor and are therefore "integral to the restructuring of the debtor-creditor relationship." <u>See</u> Record Document 4 at 22-23, <u>citing</u> U.S. Bank Nat. Ass'n v. Verizon Communication, Inc., 761 F.3d 409, 418 (5th Cir. 2014). In <u>U.S. Bank</u>, a litigation trust for a bankruptcy estate had no right to a jury trial on a fraudulent transfer claim against a creditor that had filed a proof of claim in the bankruptcy proceedings because the debtor's claims against the creditor were integral to the resolution of the creditor's claims against the debtor. <u>See id.</u> at 418-

---

[13] After initially requesting a trial by jury, the Hallwood Parties subsequently withdrew their jury demand without consent of all the parties. Fed. R. Civ. P. 38(d) expressly states a proper demand "may be withdrawn only if the parties consent." Defendants argue all parties consented by failing to respond to the Bankruptcy Court's <u>Stern</u> Order. <u>See</u> Record Document 4 at 22, n. 16. However, the parties' consent to the Bankruptcy Court's final authority does not usurp their right to jury trial. <u>See</u> In re Arbco, 479 B.R. at 267. Defendants also argue where a right to a jury trial no longer exists, consent to withdraw the jury demand is no longer required. <u>See</u> Record Document 13 at 19, <u>citing</u> Treemo, Inc. v. Flipboard, Inc., 2014 WL 4057162, *6 (W.D. Wash. 2014). As will be discussed in detail below, the Dooley Parties have waived their right to a jury trial; therefore, the Hallwood Parties' unilateral attempt to withdraw their jury demand does not violate Fed. R. Civ. P. 38(d).

25. The Fifth Circuit found the right to a jury is waived where the resolution of a claim "[would] necessarily require resolution" of a creditor's claims against the debtor. <u>See id.</u> at 418.

In April 2015, the Dooley Parties filed formal Proofs of Claim in the MBI bankruptcy proceeding. <u>See</u> Bankr. Case No. 14-12416, Claims 42-45. Through these Proofs of Claim, they seek payment on the MBI promissory note and for the salary and healthcare benefits due from MBI. In the Proofs of Claim, the Dooley parties allege their asserted claim amounts are "subject to adjustment in the event Dooley is successful in obtaining rescission of the transaction…." <u>See id.</u> In the instant matter, the Dooley Parties seek the same payment from MBI as in the bankruptcy proceeding. Additionally, they make these identical claims against one of the Defendants, Hallwood Modular (previously Leasing), under the single-business-enterprise theory and allege that Hallwood Modular and MBI are solidarily liable for "any sums in connection with this proceeding" that MBI is indebted to the Dooley Parties. <u>See</u> Adversary Document 1 at 12. Additionally, most of their allegations for rescission against MBI and Hallwood Modular are based on alleged acts of Hallwood agents. <u>See id.</u> at 9. Thus, the resolution of the rescission claims in this matter and Claims 42-45 in the bankruptcy proceeding are interconnected. <u>See</u> <u>U.S. Bank</u>, 761 F.3d at 420. The resolution of one is integral to the resolution of the other.

The Dooley Parties argue the Defendant's reliance on <u>U.S. Bank</u> is misplaced since it involved "substantial procedural and factual differences" than the instant matter. <u>See</u> Record Document 6 at 5. The crux of their argument is that <u>U.S. Bank</u> did not involve non-fraudulent transfer claims; therefore, it is distinguishable. The Dooley Parties believe

U.S. Bank actually supports their argument since the Fifth Circuit's decision recognized that the right to a jury trial on non-fraudulent transfer claims and on claims with respect to a defendant other than the debtor on non-fraudulent claims is separate and distinct from the claim to a jury trial as it relates to the fraudulent transfer claims. See id. at 6. As the Dooley Parties state, "it is clear from the court's ruling that the filing of proofs of claim by Verizon in that case did not result in a waiver of the right to a jury trial for non-fraudulent transfer causes." Id.

However, Defendants do not argue the Dooley Parties have waived their right to a jury for their rescission claim merely because they have filed Proofs of Claim in MBI's bankruptcy proceeding. Rather, Defendants use the analysis laid out in U.S. Bank to conclude that the Dooley Parties' rescission claims "will necessarily require the resolution" of the Dooley Parties' claims against the debtor, MBI, and are therefore "integral to the restructuring of the debtor-creditor relationship." Record Document 4 at 22-23. The Dooley Parties do not address this issue in any of their briefs. The Court also finds the Dooley Parties' reliance on Stern for their argument unpersuasive because there the Supreme Court analyzed the debtor's counterclaim against a creditor that had filed a proof of claim, and not the creditor's identical claims filed in his proof of claim and in the adversary proceeding, as is the case here. The Court also finds the Dooley Parties' allegation that MBI and Hallwood Modular constitute a single business enterprise, and thus are solidarily liable, a significant distinguishing fact from those present in Stern. For this reason, the Court believes the Dooley Parties' rescission claim, although a state law

claim, does not exist "without regard to any bankruptcy proceeding." <u>See</u> <u>Stern</u>, 564 U.S. at 499.

The Dooley Parties have waived their right to a jury trial because the resolution of their rescission claims "will necessarily require resolution" of the Dooley Parties' claims against MBI, the debtor, and are therefore "integral to the restructuring of the debtor-creditor relationship." Because the right to a jury for the Dooley Parties' rescission claims have been waived, the Court will not address whether rescission is a legal or equitable claim.

The Dooley Parties finally contend they have properly requested a jury trial for the Hallwood and Gossen Parties' counterclaims; therefore, the case should be withdrawn. <u>See</u> Record Document 6 at 6. The right to jury trial regarding these claims is not addressed in much detail by either party in their briefs. Even if a jury trial has been properly demanded by the Dooley Parties, it does not mandate immediate withdrawal of a reference to bankruptcy court, as judicial economy may be better served by the bankruptcy court resolving pretrial matters.[14] <u>See</u> <u>DeBaillon v. Goldking Capital Mgmt. LLC</u>, 2015 WL 3791536, at *4 (W.D. La. 2015), <u>citing</u> <u>Post Confirmation Board of Wadleigh Energy Group, Inc.</u>, 516 B.R. 850, 854 (E.D. La. 2014). Indeed, a number of courts have found that even where a party has a right to a jury trial, a motion to withdraw is premature until such time as it is determined that a jury trial must be conducted. <u>See</u> <u>Id.</u> (citations omitted); <u>Hayes v. Royala, Inc.</u>, 180 B.R. 476, 477 (E.D.Tex. 1995) ("this

---

[14] As discussed in greater detail below, the Court finds the Bankruptcy Court has extensive knowledge of the parties, facts, and legal issues involved in this adversary proceeding. For this reason, judicial economy will be better served by the Bankruptcy Court handling all pretrial matters.

court will not grant a motion to withdraw until it is readily apparent that Plaintiffs' case will require a trial"). If it is determined at a later date that Defendants' counterclaims require a jury trial, then the Dooley Parties may seek withdrawal at that time; but for now, the Court finds it more appropriate for the matter to remain in Bankruptcy Court.

### C. Factors Two-Four: Judicial Efficiency[15] and Forum Shopping

The Court's decision to allow this case to remain in the Bankruptcy Court is supported by the remaining Holland America factors. First, allowing this case to remain in the Bankruptcy Court will foster judicial efficiency. District Courts have routinely rejected the Dooley Parties' argument that uniformity in bankruptcy administration will be promoted, the debtor's and creditors' resources will be economically used, and the bankruptcy process will be expedited, if the reference to the Bankruptcy Court were withdrawn because it would dispense with the need for a later appeal. See In Re McBride, 2010 WL 1688017, *2 (M.D. Ala. 2010), quoting In re Tate, 2010 WL 320488, *10 (S.D. Ala. 2010) ("[i]f accepted, this kind of reductionist reasoning would result in the reference always being withdrawn from the Bankruptcy Court in the name of efficiency because of the omnipresent possibility of appeal"); see also In re Formica Corp., 305 B.R. 147, 150 (S.D. N.Y. 2004) ("[t]he plaintiff's contention that this Court would have to review any bankruptcy court determination *de novo* carries little weight in light of the litigation already occurring before the bankruptcy court"); In re Wieboldt Stores, Inc., 1988 WL 71718, *2

---

[15] Whether (1) uniformity will be promoted, (2) debtor's and creditor's resources will be economically used, and (3) the bankruptcy process will be expedited have been considered broadly under the rubric of "judicial economy" or "efficiency." See In re OCA, Inc., 2006 WL 4029578, *5 (E.D. La. 2006); In re Guynes Printing Co. of Texas, Inc., 2015 WL 3824070, *1 (W.D. Tex. 2015) (summarizing these factors as "whether withdrawal promotes efficiency").

(N.D. Ill. 1988) ("the possibility that a party may appeal a decision of the bankruptcy judge to the district court does not, by itself, mandate a withdrawal of reference").

Rather, the familiarity of the Bankruptcy Court with all the parties and issues involved in this matter suggests it would be more economical for the case to stay put. In In re Enron Corp., 295 B.R. 21, 26 (S.D. N.Y. 2003), a case with analogous procedural facts to the instant matter, the court found "it would be an inefficient use of judicial resources" to withdraw the reference, stating:

> With regard to judicial economy, the Bankruptcy Court has been involved in the Enron bankruptcy proceedings ever since Enron and its various subsidiaries filed for Chapter 11 protection 18 months ago. Bankruptcy Judge Gonzalez holds hearings on Enron bankruptcy matters frequently; has maintained an efficient case management system for Enron-related matters; is familiar with the procedural history and facts surrounding the financial collapse of Enron . . . .

In addition to conducting the MBI bankruptcy proceeding since October 2, 2014, the Bankruptcy Court has had the Dooley Parties' adversary proceeding before it for almost three full years. The Bankruptcy Court is very familiar with the various parties in this case, the complex factual background and the legal issues involved. The parties have conducted discovery, filed, briefed, and argued motions that the Bankruptcy Court has decided. Since the filing of the instant motion, the Bankruptcy Court has ruled on five motions for summary judgment regarding the Dooley Parties' claims against the defendants, and five motions to dismiss in this matter. See Record Documents 14-1 and 16. Therefore, it is more economical for the Bankruptcy Court to retain this adversary proceeding.

After initially suggesting "there is no indicia of forum shopping present," the Dooley Parties contend if any party should be accused of forum shopping, it is the Defendants. See Record Document 1-2 at 13; Record Document 6 at 9. However, the Court finds that the Dooley Parties' multiple attempts to litigate this matter in state court reflect their attempt to forum shop. "The district court must be careful to assess the movant's intent in seeking withdrawal to the district court." Case Energy Servs., LLC v. Padco Energy Servs., LLC, 2017 WL 4544719, *4 (W.D. La. 2017), quoting Kingdom Fresh Produce, Inc. v. Delta Produce, LP, 2015 WL 869240, at *4 (W.D. Tex. Feb. 27, 2015) (emphasis added). "Motions to withdraw pose significant risks of forum shopping because a party can first observe the bankruptcy judge's rulings, and then decide whether to bring the motion." Id.; see also In re Meany, 1999 WL 179352, *1 (E.D. La. 1999) ("commentators have observed a reluctance on the part of district courts to grant motions to withdraw reference because they 'smack of forum-shopping'") (citation omitted).

Here, the Dooley Parties initially brought their claims in Louisiana state court. After MBI declared bankruptcy, and after they were unable to lift the automatic stay of their state court proceeding, the Dooley Parties filed Proofs of Claim and their original Complaint in the Bankruptcy Court. See Adversary Document 1. Afterward, the Dooley Parties (with the exception of David M. Dooley, Jr. and Chris Vallot) filed a Petition for Writ of *Mandamus* and/or Writ of *Quo Warranto* in the 15th Judicial District, Acadia Parish, Louisiana, and named as defendants Hallwood Financial, Hallwood Modular, Gumbiner, Lessing, and Gossen. See Adversary Document 20-1. The Bankruptcy Court granted the Hallwood Parties' Motion for Injunction of State Court Proceeding noting, "[b]oth this

adversary proceeding and the State Court Action contain the same or similar facts and parties. Both actions concern the rescission of certain transactions and contracts." Adversary Document 50. Further, the *Quo Warranto* petition was "the second state court lawsuit, and the third overall, filed by the Dooley Parties regarding the same or similar facts, legal issues and involving the same parties." Id. The Bankruptcy Court found that the *Quo Warranto* petition was "an attempt by the Dooley Parties to litigate issues in state court over which [the Bankruptcy] Court has concurrent jurisdiction ... , [and] [the Bankruptcy] Court has already expressly denied the Dooley Parties' request to lift the stay and return these matters to state court." Id.

Finally, Mr. Dooley filed his Petition for Declaratory Judgment in Louisiana state court on May 6, 2016, commencing his fourth lawsuit regarding his claims in this case. See Record Document 23-1. In this petition, Mr. Dooley seeks the nullity of two contracts that he also seeks to nullify for the same reason in the adversary proceeding. See id. On August 8, 2016, the district court in Acadia Parish stayed the fourth lawsuit because Mr. Dooley's claims arose out of the same transaction or occurrence as the claims in the adversary proceeding. See Record Document 23-3.

It is clear that the Dooley Parties have attempted to forum shop their case out of the Bankruptcy Court. Motions to withdraw the reference are meant to prevent forum shopping, not aid it. Accordingly, this factor weighs against withdrawal.

**CONCLUSION**

On balance, the <u>Holland America</u> factors weigh against withdrawing the adversary proceeding at this time. For the reasons set forth above, the Dooley Parties' "Motion to Withdraw Reference" (Record Document 1) is **DENIED.**

**THUS DONE AND SIGNED** in Shreveport, Louisiana, this 1st day of March, 2018.

S. MAURICE HICKS, JR., CHIEF JUDGE
UNITED STATES DISTRICT COURT